FRED C. HIEB, as Administrator of the Estate of John Hoff, Deceased, Respondent, v. JACOB HOFF, Appellant.

(179 N. W. 696.)

**Executors and administrators — evidence held sufficient to sustain verdict for plaintiff.**

In an action brought by an administrator to recover money loaned by the decedent to the defendant, the evidence is examined and *held* sufficient to support the verdict for the plaintiff.

Opinion filed October 23, 1920.

Appeal from District Court, Bottineau County, *W. J. Kneeshaw*, J. Affirmed.

*J. J. Weeks*, for appellant.

*W. H. Adams*, for respondent.

BIRDZELL, J.   This is an action brought by the plaintiff as administrator of the estate of John Hoff, deceased, to recover of the defendant the sum of $1,955.20, which it is claimed was loaned to the defendant by John Hoff on or about October 2, 1918. The defendant denies that the money was loaned to him. The facts disclosed by the record are as follows:

On August 12, 1918, John Hoff and his father, Jacob Hoff, the defendant, had a transaction with one August Pranke, whereby August Pranke agreed to purchase certain personal property of John Hoff amounting to $2,600, and certain real property the record title of which was in Marie Hoff, mother of John Hoff, and wife of Jacob Hoff,

amounting to $6,400. The parties went into the State Bank of Omemee, and, after discussing their deal, called upon the cashier of the bank, N. F. Maakestad, to draw up a bill of sale of the personal property and a contract for deed covering the land. The contract for deed was signed by Marie Hoff, John Hoff, and August Pranke. The former instrument recited the payment of $2,600, but it was left in escrow with the cashier of the bank. The latter instrument called for the payment of $100 at the time of delivery of the contract, $2,300 on October 1, 1918, and the balance by instalments of $1,000 each, due November 1, 1919, and annually thereafter. The payment of $100 was made at the time the contract was entered into. On October 2, 1918, Pranke, John Hoff, and Jacob Hoff again went to the State Bank of Omemee, where Pranke paid $5,144.35, which John Hoff, the son, directed to be credited as follows: $644.35 to his own checking account and $4,500 to the credit of Jacob Hoff, the defendant. John Hoff died November 28, 1918.

The plaintiff and respondent contend that the $4,500 credited to the defendant included the larger portion of the $2,600 which was paid for the personal property covered by the bill of sale from John Hoff to August Pranke, and that John Hoff directed it to be credited to his father in pursuance of an understanding or agreement that he would loan it to him to enable him to partially clear up a mortgage on some land. The jury rendered a verdict for the plaintiff for $2,181.30, upon which judgment was entered.

The only question for consideration on this appeal is whether or not there is sufficient evidence to support the verdict. We are of the opinion that the verdict is amply supported. A witness by the name of Zarnetski testified that he had taken some part in the negotiations leading up to the deal that was consummated in August, 1918, acting for Pranke, and that he was present in the bank when the papers were executed. He is one of the witnesses to the contract for deed. He testified that during a conversation at that time between Jacob Hoff and John Hoff, Jacob Hoff indicated a desire to borrow some money to apply on a mortgage, stating that he did not have the money and would have to borrow it; whereupon John said that he would get money on the payment for the land and the property included in the Pranke deal, and that he would let his father have the use of that. Upon cross-ex-

amination he was asked whether or not he understood John to say that he would loan his father not only the money that came from the personal property, but also the money that came from his father's land or his mother's land. In response he stated that John had told him that the land actually belonged to him, but that it was in his mother's name yet. (No claim is made in this suit, however, for any money paid on acount of the land.) Pranke testified that the payment made October 2d included full payment for the personal property purchased ($2,600), and that the balance was to apply on the land.

Maakestad testified that John Hoff directed him to credit the money to the respective accounts of himself, and his father in the amounts hereinabove indicated, saying at the time that the $4,500 was the father's money. According to Maakestad's recollection, John's direction was as follows: "You put $4,500 in pa's name, that belongs to pa; put that in his name. The balance put to my credit on checking account."

There is some further testimony offered in the nature of an admission. The plaintiff administrator and his sister, the widow of John Hoff, in December, 1918, approximately a month after the death of John Hoff, called upon the defendant and asked him if he knew what became of the money that John got for the personal property, and that after some hesitation he said he did not know anything about it; that he did not have anything to do with that. Mrs. John Hoff also testified to this conversation, and it is not disputed by the defendant. The bill of sale and contract for deed are in evidence, and are in accord with the testimony regarding the consideration.

In the state of the evidence as disclosed above, it clearly appears that of the payment of $5,144.35 at least $2,600 belonged to John Hoff as payment for the personal property; that of that payment he received only $644.35, which was placed to his checking account in the bank; that there had been a conversation between John Hoff and the defendant less than two months before, in which it was agreed that John would loan the defendant some money out of this transaction to apply on a mortgage; and that the defendant, though present at the time the money was paid and credited at the bank, including the $2,600 owing to John, part of which was credited to his account, professed to have no knowledge as to what had become of John's part of the money thus

paid. We are of the opinion that upon the whole record there is ample, substantial testimony to support the verdict of the jury. The judgment is affirmed.